IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**FILED**

JUN 2 3 2006

U.S. DISTRICT COURT
CLARKSBURG, WV 26301

**ALFRED ELI,**

    **Plaintiff,**

v.

Civil action no. 1:04cv220
(Judge Keeley)

**UNITED STATES OF AMERICA.**

    **Defendant.**

## REPORT AND RECOMMENDATION

On August 31, 2004, the pro se plaintiff, Alfred Eli, filed this action under the Federal Tort Claims Act.[1] On December 9, 2004, the undersigned entered a Report and Recommendation, recommending that the plaintiff's complaint not be summarily dismissed and the defendants be served with a copy of the complaint.[2] On January 4, 2005, the Court adopted the Report and Recommendation in its entirety and ordered the Clerk to mail a copy of the complaint to the defendants. On April 7, 2005, a Notice of Substitution was filed together with a Certification of Scope of Employment.[3] On April 8, 2005, the United States of America filed its answer to the Complaint.

---

[1]This action was initially filed in the United States District Court for the District of Columbia. On the same date it was filed, the District of Columbia determined that it did not have venue and entered an order transferring the case to this Court. The case was received by this Court on October 12, 2004.

[2]As filed, the complaint named as defendants: Dennis Morgan, case manager; Dave Moffat, administrator: the Federal Bureau of Prisons; and the United States of America.

[3]"[The FTCA] immunizes a federal employee from liability for his "negligent or wrongful act[s] or omission[s]...while acting with the scope of his employment...28 U.S.C. §2679(b)(1)." Maron v. United States, 126 F.3d 317, 321 (4th Cir. 1997). However, an employee is not immune if the employee violated the United States Constitution or United States Statutes. 28 U.S.C. §2679(b)(2). When a federal employee is sued, the United States Attorney, acting on behalf of the

On April 18, 2005, an Order was entered granting the motion to substitute the United States as the sole defendant for those alleged acts or omissions of Dennis Morgan, Dave Moffat and the Federal Bureau of Prisons. On May 26, 2005, the matter was referred to the undersigned for further report and recommendation. Now pending is the defendant's Motion for Summary judgment which is ripe for review.

## I. **Factual Background**

The plaintiff was convicted in the United States District Court for the District of Columbia on April 12, 1998, for unlawful distribution of cocaine base. Thereafter, he was sentenced to a term of 121 months. He was initially incarcerated at the Federal Correctional Institute in Cumberland, Maryland On January 11, 1999, he was admitted to an in-transit facility and arrived at the low security correctional institution in Allenwood, Pennsylvania on January 11, 1999. He remained at that facility until January 2, 1999, when he was transferred to FCP Lewisburg. On April 1, 2003 the plaintiff was transferred to the Federal Correctional Institution in Gilmore, West Virginia, and on December 30, 2003, he was transferred to the Federal Correctional Institute in Morgantown, West Virginia. On July 18, 2005, the plaintiff was released from incarceration and is now living in Maryland.

The plaintiff's medical records indicate that while he was incarcerated at FPC Lewisburg, he was seen on various occasions for testicular pain and complaints related to bilateral varicocele. For instance, on October 15, 1999, the plaintiff was examined by an urologist for complaints of chronic testicular pain and a prior diagnosis of varicocele. The plaintiff was instructed to wear scrotal support briefs and prescribed Cipro and Ibuprofen. He was again seen by urologist on December 10, 1999 and

---

Attorney General, must certify whether that employee was in fact acting within the scope of his or her employment at the time of the alleged incident. 28 U.S.C.§2679(d)(1). Once this certification is made, the United States is substituted as the sole defendant. Maron, 126 F.3d at 321.

2

no additional treatment was recommended. On May 5, 2000, the plaintiff was seen for hematuria and testicular pain. A two week course of Cipro was prescribed, and a kidney ultrasound and cytoscopy were ordered. On May 22, 2000, the plaintiff underwent an ultrasound, which resulted in no recommendation for further treatment. On July 7, 2000, he had a cytoscopy, which resulted in a diagnosis which included urethra stricture. He was placed on a trial of medication for six months with a six month follow examination recommended. He was seen for follow-up on January 29, 2001. Moderate improvement was noted, and he was continued on the trial medication plus Cipro for three weeks.

On October 14, 2001, the plaintiff was seen for a complaint of groin pain. He was diagnosed with groin strain and was prescribed Nofroxen for ten days with followup as needed. Followup care for the groin strain was accomplished on December 31, 2001. He was again given Nofroxen for ten days with one refill. On January 17, 2002, the plaintiff was seen with a diagnosis of prostatitis and varicocele. He was prescribed Cipro for six weeks and encouraged to wear an athletic supporter for the varicocele. Annual follow-up was recommended unless sooner needed.

On November 27, 2002, a request for Transfer Form was initiated to transfer the plaintiff from FPC Lewisburg to FCI Gilmore. The form notes the plaintiff requested to be considered for transfer. The form also notes that the medical staff had classified the plaintiff as regular duty status with no medical restrictions.

The plaintiff was next seen by a urologist on February 13, 2003, and bilateral grade 3 varicoceles were noted. The plaintiff complained that the varicoceles caused him pain. Consequently, bilateral vcaricocelectomies were recommended. A consultation sheet, prepared by the prison physician, requested that the plaintiff be seen by the outside urologist no later than March 2003.

On April 1, 2003, the plaintiff was transferred to FCI Gilmore, as he had requested. The

3

medical summary, prepared March 31, 2003, for purposes of the transit indicates that the plaintiff required no medication en route, had no travel restrictions, and required no medical equipment while in transport. Significantly, the summary makes no mention of any surgery having been scheduled or being in need of scheduling.

On May 21, 2003, the plaintiff was assigned to a lower bunk due to his varicoceles. On June 16, 2003, the plaintiff was seen by a urologist for painful varicoceles. The physician notes indicate that surgery has been recommended but was cancelled.[4] The urologist diagnosed prominent varicoceles, chronic prostatitis, and benign prostatic hyperplasia. The urologist also noted that the plaintiff believed surgery would provide relief. A testicular sonogram was ordered and performed on July 14, 2003. The conclusions generated from the sonogram were that varicocles were present on the left side with normal appearing testicles on both sides. The final medical record indicates that the plaintiff was seen by a urologist on July 24, 2003 for right scrotal swelling. The diagnosis was chronic prostatitis, benign prostatic hyperplasia, prominent left scrotal varicocles, and chronic right scrotal swelling with pain. The urologist recommended that the plaintiff be referred to another physician for a possible right inguinal hernia. On September 18, 2003, the plaintiff signed a Medical Treatment Refusal form, whereby he noted that he was refusing to take medication prescribed by the Bureau of Prisons Medical Staff and understood that as a consequence he might continue to experience persistent testicular pain. (Doc. 1, p. 11)

## II. The Complaint

The plaintiff indicates that he has filed this suit under the Federal Tort Claims Act to "recover

---

[4]It is unclear from the report whether the surgery was truly cancelled or simply did not occur because of the plaintiff's transfer. In addition, it is not clear whether the physician had prior medical records for his review or whether he simply relied on the plaintiff's recitation of the facts to complete his report.

4

damages for the negligent or 'Deliberate Indifference' or intentional actions or failures to act of various employees of the Federal Bureau of Prisons which denied him adequate and appropriate surgical and medical care for his varicoceles". (Doc. 1, p. 5) The plaintiff specifically notes that he had an appointment for surgery but was transferred shortly before the surgery date and has since been denied surgery following his transfer to FCI Gilmore and FCI Morgantown. The plaintiff seeks damages in the amount of $50,000.00[5] for his pain and suffering and additional damages to be determined for any further physical injury to him caused by the department's failure to provide adequate surgical or medical care. In addition, he requested that the Court order the BOP to send him to an appropriate specialist and make sure he receives the treatment recommended by that specialist including surgery, if appropriate.

### III. Discussion

The Federal Tort Claims Act (FTCA) is a comprehensive legislative scheme by which the United States has waived its sovereign immunity to allow civil suits for actions arising out of negligent acts of agents of the United States. The United States cannot be sued in a tort action unless it is clear that Congress has waived the government's sovereign immunity and authorized suit under the FTCA. Dalehite v. United States, 346 U.S. 15, 30-31 (1953). The provisions of the FTCA are found in Title 28 of the United States Code. 28 U.S.C. § 1346(b), § 1402(b), § 2401(b), and §§ 2671-2680.

The FTCA includes specific, enumerated exceptions in 28 U.S.C. § 2680. If an exception

---

[5]An action may not be brought for damages greater than the amount of the claim presented to the federal agency. An exception is made when the increased amount is based on newly discovered evidence that was not reasonably discoverable at the time the claim was presented or when there are intervening facts related to the amount of the claim. 28 U.S.C. § 2675(b); Kielwein v. United States, 540 F.2d 676 (4th Cir.), cert. denied, 429 U.S. 979 (1976). The exception does not apply in this case, and therefore, the plaintiff's recovery, if any, is limited to the $25,000.00 he demanded in his administrative claim.

5

applies, the United States may not be sued, and litigation based upon an exempt claim is at an end. Smith v. United States, 507 U.S. 197 (1993); Dalehite, supra. Among the exceptions to the FTCA most frequently applied is "discretionary function". The discretionary function exception precludes governmental liability for"[a]ny claim based upon ... the exercise or performance or failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). The discretionary function exception "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines), 467 U.S. 797, 808 (1984). Congress believed that imposing liability on the government for its employees' discretionary acts "would seriously handicap efficient governmental operations." Id. at 814 (internal citations and quotations omitted).

The United States Supreme Court has announced a two-step test for determining whether the discretionary function exception bars suit against the United States in a given case. First, the Court must consider the nature of the conduct and determine whether it involves "an element of judgment or choice." United States v. Gaubert, 499 U.S. 315, 322 (1991). Government conduct does not involve an element of judgment or choice and is not discretionary, if "a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow, because the employee has no rightful option but to adhere to the directive." Id. at 322 (internal citations and quotations omitted). If, the conduct in question involves the exercise of judgment or choice, the second step of the analysis is to determine whether that judgment is grounded in considerations of public policy. "[T]he purpose of the exception is to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." Id. at 323.

In the instant case, the conduct at issue is the decision to transfer the plaintiff to FCI Gilmore before surgery was performed through a referral from FCP Lewisburg. 18 U.S.C. § 3621(b), provides in relevant part that the BOP: "shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau...that the Bureau determines to be appropriate and suitable, considering-

> (1) the resources of the facility contemplated;
>
> (2) the nature and circumstances of the offense;
>
> (3) the history and characteristics of the prisoner;
>
> (4) any statement by the court that imposed the sentence-
>
>> (A) concerning the purpose for which the sentence to imprisonment was determined to be warranted; or
>> (B) recommending a type of penal or correctional facility as appropriate; and
>
> (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of Title 28."

This section also provides that the BOP "may at any time, having regard for the same matters, direct the transfer of a prisoner from one penal or correctional facility to another." Thus, it is clear from this statutory language that there is no mandatory regulation or policy for the BOP to employ in placing prisoners in a particular institution or transferring them to another. Rather, the BOP has the element of judgment or choice, and the first part of the two-part discretionary function test is satisfied.

Therefore, the issue becomes whether the BOP's discretion in transferring prisoners is the type of discretion that the discretionary function exception is intended to protect; *i.e.*, whether it

is grounded in public policy. Clearly it is. As the Supreme Court has noted: actions or decisions are "grounded in [public] policy" in cases where the statute allows government officials to exercise discretion. Gaubert, supra at 324. In addition, the Supreme Court has held that: "prison administrators...should be accorded wide ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Bell v. Wolfish, 441 U.S. 520, 527 (1979).

Therefore, the actions resulting in the plaintiff's transfer prior to his surgery satisfy the two step test to determine the applicability of the discretionary function exception. Accordingly, the discretionary function exception applies and shields the United States from liability for plaintiff's claim under the FTCA.

## IV. RECOMMENDATION

In consideration of the foregoing, it is the undersigned's recommendation that the defendant's Motion for Summary Judgment (Doc. 19) be **GRANTED** and the plaintiff's Complaint be **DISMISSED WITH PREJUDICE**.

Within ten (10) days after being served with a copy of this recommendation, any party may file with the Clerk of the Court written objections identifying the portions of the recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

The Clerk of the Court is directed to provide a copy of this Report and Recommendation to the *pro se* plaintiff and any counsel of record as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

Dated: June 23, 2006

JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE